IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALANA JONES, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 08 C 3501 |
| CITY OF CHICAGO, RICHARD WISER, LUKE KELLY, EDWARD WODNICKI, VITO FERRO, and BARRETT MORAN, JR., | ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Yahree Cavin sued the city of Chicago and several Chicago police officers in relation to his arrest and prosecution for armed robbery. He asserted federal due process and conspiracy claims as well as state-law claims of malicious prosecution and civil conspiracy. Cavin died on December 20, 2010, and subsequently Alana Jones, the mother of Cavin's son, was substituted as the plaintiff pursuant to Federal Rule of Civil Procedure 25(a)(1). Defendants have moved for summary judgment on all of Jones's claims. For the reasons stated below, the Court grants the motion.

### Background

On the evening of November 7, 2005, armed individuals wearing masks robbed a McDonald's restaurant located on Navy Pier in Chicago. Cavin, an eighteen-year-old high school senior, was present during the robbery, as were McDonald's employees Sonya Thorne and Tanisha Clark. Cavin had been employed at the restaurant during

the previous six months. According to Thorne, who was Cavin's manager, Cavin had been terminated the previous week. During the robbery, the armed individuals took Thorne and Clark into a back office at gunpoint, leaving Cavin in the main area of the restaurant. They then forced Thorne to open a safe and took out two plastic bags containing an unspecified amount of cash. The individuals ultimately left Thorne and Clark in the office and were never identified or apprehended.

Jeff Johnson, a Navy Pier security guard, was the first person to respond to a security call reporting the robbery. Johnson testified at his deposition that when he arrived at the McDonalds, the store's security gate was closed. He also saw a young man running around and jumping in the main dining area of the restaurant. Johnson called out to the person and asked him whether everything was alright. According to Johnson, the person did not tell Johnson about the robbery or ask him to call the police. When the police eventually arrived, Johnson told them about this encounter. Plaintiff admits this person was Cavin. *See* Pl.'s Resp. to Defs.' LR 56.1(A)(3) Stmt. of Facts ¶ 42 ("Admit that security guard Johnson talked to the responding detectives and told them about his conversation and questions *with Cavin*") (emphasis added).

Officers Richard Wiser and Luke Kelly arrived at the restaurant at approximately 9:37 p.m. When the officers attempted to open locked glass doors to enter the restaurant, they saw Cavin standing inside the restaurant near the counter area. Both officers testified that Cavin looked at them and then disappeared toward the back of the restaurant. The officers forced their way in and reached the back office. They did not, however, find Cavin in that area or elsewhere in the restaurant, nor did they see him leave the restaurant.

Thorne and Clark let the officers into the back office. Thorne told them that she had seen Cavin outside of the restaurant earlier and did not know why he was there. She also stated that Cavin had reappeared near the restaurant's side door holding food trays just as Thorne and Clark opened the door to leave. According to Clark, Cavin asked Thorne if he could put the trays in the back of the restaurant. After Thorne gave him permission, Cavin entered the restaurant. Immediately after he came in, the armed individuals came out of a bathroom outside the McDonald's and rushed into the restaurant behind Cavin, pointing guns at Thorne and Clark and demanding money from the safe. Thorne and Clark told the officers that Cavin had been fired from his job at the restaurant about one week before the robbery.

Officers Wiser and Kelly later encountered Cavin outside of the restaurant, which he had apparently left via another exit. The officers took Cavin into custody and handcuffed him. They also spoke with two Chicago police detectives, Vito Ferro and Barrett Moran, about what they had learned. Officer Wiser told the detectives about Thorne and Clark's explanation of Cavin's presence at the restaurant door seconds before the armed individuals entered. The detectives also interviewed Thorne and Clark separately.

Later, Moran read Cavin his rights under *Miranda v. Arizona*, and two other police officers transported him to the Area 3 police station. During the trip to Area 3, Cavin told the officers that no one entered the restaurant after he did; someone pointed a gun at him and told him to get on the ground; he went to the restaurant to see Thorne; and he had intended to jump over the counter in the restaurant, but did not because he was threatened with a gun.

The detectives also went to the Area 3 station, where they were met by Assistant State's Attorney Sabra Ebersol. ASA Ebersol was the felony review attorney assigned to the case. The detectives told ASA Ebersol about the circumstances of the robbery and Cavin's arrest. At her deposition, ASA Ebersol testified that she interviewed Cavin and three other people who witnessed the events surrounding the robbery, including Thorne and Clark. After speaking with the witnesses and reviewing a general offense case report created by Officer Wiser, ASA Ebersol concluded that there was probable cause to charge Cavin with armed robbery.

After being charged, Cavin was held at Cook County Jail for approximately twenty-five months. Before the case proceeded to trial, however, the charges were terminated after the prosecution moved to *nolle prosequi* the charges. Assistant State's Attorney Sharon Kanter, who was also assigned to Cavin's case, testified that the decision to *nolle prosse* the charges reflected the proecution's view that it could not satisfy its burden of proof at trial. Cavin filed the present action on June 18, 2008. It was transferred to the undersigned judge's docket in late October 2010 after the retirement of Judge Wayne Andersen.

## Discussion

On a motion for summary judgment, the Court "view[s] the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 629 F.3d 653, 656 (7th Cir. 2010). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, a court may grant summary judgment

4

"where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**1.   Federal claims**

Of the four claims Jones asserts, two arise under federal law.  In count one of her complaint, Jones contends that defendants withheld material exculpatory information from Cavin and the prosecutors in violation of the rule set forth in *Brady v. Maryland*, 373 U.S. 83 (1976), thereby causing Cavin to be charged with armed robbery and held in jail for over two years.  In count two, Jones argues that defendants violated 42 U.S.C. § 1983 by conspiring to conceal the above misconduct and ensure that Cavin's prosecution continued despite the absence of probable cause.

**a.   Due process/*Brady* claim**

Jones contends that by "fabricating evidence" and "withh[o]ld[ing] exculpatory evidence in order to mislead the prosecution," defendants violated Cavin's right to due process.  Pl.'s Resp. in Opp. to Defs.' Mot. for Summ. J. at 19 ("Pl.'s Resp."). Defendants argue that they are entitled to summary judgment on this claim because the charges against Cavin were dismissed and "[t]here can be no violation of a trial right when there is no trial."  Defs.' Summ. J. Mem. at 4.

In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Brady*, 373 U.S. at 87.  A plaintiff states a viable due process claim under 42 U.S.C. § 1983 when he contends that he did not receive a fair trial due

5

to the prosecution's withholding of material exculpatory evidence. *See Newsome v. McCabe*, 256 F.3d 747, 752 (7th Cir. 2001). The Seventh Circuit recently held, however, that a plaintiff cannot maintain such a claim if the case against him did not proceed to trial. *Ray v. City of Chicago*, 629 F.3d 660, 664 (7th Cir. 2011) ("Ray has failed to identify a single instance . . . where we have allowed such suits where the individual is merely charged with a crime, but never fully prosecuted").

The parties agree that no trial occurred on the charges against Cavin. Accordingly, Cavin's due process claim cannot succeed. *Cf. Garcia v. City of Chicago*, 24 F.3d 966, 971-72 (7th Cir. 1994) (concluding that, where prosecutor sought a *nolle prosequi* dismissal prior to trial, "[defendant's] right to due process of law was satisfied" and no *Brady* claim arose). Defendants are therefore entitled to summary judgment on count one.

### b. Section 1983 conspiracy claim

In count two, Jones alleges that defendants conspired to deprive Cavin of his constitutional rights by withholding materially exculpatory evidence. This claim also fails as a matter of law. "For liability under [section] 1983 to attach to a conspiracy claim, defendants must conspire to deny plaintiffs their constitutional rights: *there is no constitutional violation in conspiring to cover up an action which does not itself violate the constitution.*" *Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir. 1996) (emphasis added). As discussed above, the undisputed facts would not permit a reasonable jury to find that Cavin suffered a violation of his constitutional rights as a result of defendants' alleged withholding of evidence. Defendants are therefore entitled to summary judgment on Jones's conspiracy claim. *Cf. Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir.

6

2000) (where trier of fact found no constitutional injury, plaintiff could not recover on conspiracy claim).

**2.    State law claims**

    **a.    Malicious prosecution claim**

In count three, Jones contends that defendants are liable for malicious prosecution based on their role in arresting and prosecuting Cavin for armed robbery. Defendants counter that summary judgment is appropriate because (1) there was probable cause to arrest Cavin, (2) the criminal proceedings were not terminated in Cavin's favor, and (3) defendants did not commence or continue the proceedings against Cavin.

The parties agree that Illinois law governs Jones's state law claims. "To prove the tort of malicious prosecution, a plaintiff must demonstrate:  (1) that defendants began or continued the original criminal proceeding; (2) plaintiff received a favorable termination; (3) probable cause did not exist; (4) malice was present; and (5) plaintiff suffered damages." *Aguirre v. City of Chicago*, 382 Ill. App. 3d 89, 96, 887 N.E.2d 656, 662 (2008) (citing *Swick v. Liautaud*, 169 Ill. 2d 504, 512, 662 N.E.2d 1238, 1242 (1996)). If any one of these elements is not satisfied, the plaintiff's claim fails. *Id.* In particular, the existence of probable cause defeats a claim of malicious prosecution. *Ely v. Nat'l Super Markets, Inc.*, 149 Ill. App. 3d 752, 758, 500 N.E.2d 120, 124 (1986).

Based on the undisputed facts, the Court concludes that no reasonable jury could find that defendants did not have probable cause to arrest and charge Cavin. Under Illinois law, "[p]robable cause is a state of facts that would lead a person of ordinary care and prudence to believe or entertain an honest and sound suspicion that

the accused committed the offense charged." *Fabiano v. City of Palos Hills*, 336 Ill. App. 3d 635, 642, 784 N.E.2d 258, 266 (2002). The existence of probable cause is determined as of "the time of subscribing a criminal complaint." *Ely*, 149 Ill. App. 3d at 758, 500 N.E.2d at 124. "A reasonable ground for belief of an accused's guilt may be on information from other persons as well as on personal knowledge," and "[w]here the victim of the crime supplies the police with the information forming probable cause, there is a presumption that this information is inherently reliable." *Sang Ken Kim v. City of Chicago*, 368 Ill. App. 3d 648, 655, 858 N.E.2d 569, 575 (2006) (internal quotation marks omitted).

Defendants had information sufficient to give a person of ordinary care an "honest suspicion" that Cavin was involved in the robbery. It is not genuinely disputed that Thorne told Officers Wiser and Kelly that Cavin had been fired a week before the robbery and that she was not expecting Cavin when she saw him outside of the restaurant. Hearing these facts likely would lead a prudent police officer to believe that Cavin may have had a motive to participate in the robbery and to suspect that Cavin's presence at the restaurant that day was not entirely innocent.

It is likewise not genuinely disputed that both Thorne and Clark told the officers that the masked gunmen rushed into the restaurant immediately after they opened the door for Cavin, who had asked permission to enter to take some food trays inside the store. These statements indicated that Cavin's unanticipated and somewhat unusual appearance at the doorway occurred immediately prior to the appearance and entry of the gunmen. A prudent person in the officers' position would have a sound basis to believe that the events were related and Cavin had tricked Thorne and Clark into

8

opening the locked door so that the armed individuals could enter.

Finally, the officers had seen Cavin inside the store and observed that he saw them and then disappeared from their sight, and they were aware that he was next seen outside the store. This would have indicated to a prudent police officer that Cavin had attempted to flee or warn other participants that the police had arrived. The police also had the statement of security guard Johnson, who reported that he had spoken with Cavin while Cavin was still inside the restaurant–either during or after the robbery–and that Cavin said everything was fine and did not ask for help. Though Jones appears to deny that Johnson actually had this interaction with Cavin, it is not genuinely disputed that this is what Johnson told the police. There is no basis in the evidence that would have led a reasonable police officer to doubt the veracity of what Johnson reported. Johnson's comments would have suggested to a prudent person that Cavin had attempted to divert attention from the robbery, further implicating him as a potential accomplice.

In sum, no reasonable jury could find that the information the police had would not cause a person of ordinary care and prudence to entertain a firm suspicion that Cavin had participated in the robbery.

Jones argues that defendants charged Cavin simply because he decided to seek the advice of a lawyer. Pl.'s Resp. at 8 ("When [Cavin] became too afraid to continue talking, he asked to speak to a lawyer. . . . Det[ective] Ferro took this as a sign of guilt. . . . Because Cavin 'lawyered up' he would be charged with the crime."). But even if true, this does not defeat the existence of probable cause to charge Cavin. The existence of probable cause is determined based on what a "person of ordinary caution and

9

prudence" would believe, not what the individual officers subjectively thought. *Fabiano,* 336 Ill. App. 3d at 642, 784 N.E.2d at 266; *see also People v. Wear*, 229 Ill. 2d 545, 567, 893 N.E.2d 631, 644 (2008) (rejecting a similar argument: "[I]t is irrelevant that Officer Dawdy did not form the intent to arrest Wear until he was inside, because, based on objective circumstances, he retained the ability to arrest him when he was outside"). Even if Cavin's request for a lawyer played a role in the officers' determination of whether to seek or institute criminal charges, this does not detract from the existence of probable cause.

Jones also contends that the defendant officers included false and misleading information in their written reports on the robbery, thereby misleading ASA Ebersol into charging Cavin. The parties agree that ASA Ebersol reviewed one of these reports (Wiser's general offense case report) and received a briefing from detective Ferro before making her probable cause determination. As noted above, however, Jones also concedes that "ASA Ebersol interviewed Cavin *after she interviewed Thorne and Clark*." Pl.'s Resp. to Defs.' LR 56.1(A)(3) Stmt. of Facts ¶ 57 (emphasis added). She also concedes that ASA Ebersol testified that she independently interviewed the witnesses and that, in her recollection, the witnesses' stories were similar to the contents of the general offense case report. As such, even if the defendant officers included misleading facts in their written and oral reports to ASA Ebersol, Ebersol's own investigative efforts independently support a finding of probable cause to charge Cavin.

For the reasons stated above, the Court concludes that no reasonable jury could find that defendants lacked probable cause to charge Cavin with armed robbery. The Court thus need not consider defendants' remaining arguments. Defendants are

10

entitled to summary judgment on Jones's malicious prosecution claim.

### b. Civil conspiracy claim

In count four, Jones alleges that defendants are liable for conspiring to cause Cavin to be arrested and prosecuted without probable cause. In Illinois, "the elements of a civil conspiracy are: (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Fritz v. Johnston*, 209 Ill. 2d 302, 317, 807 N.E.2d 461, 470 (2004). As the third element of this test indicates, however, civil conspiracy is not an independent tort: if a "plaintiff fails to state an independent cause of action underlying his conspiracy allegations, the claim for conspiracy also fails." *Thomas v. Fuerst*, 345 Ill. App. 3d 929, 936, 803 N.E.2d 619, 626 (2004). Because defendants are entitled to summary judgment on Jones's state law claim for malicious prosecution and Jones's conspiracy claim is predicated on her malicious prosecution claim, defendants are also entitled to summary judgment on count four. *Cf. Siegel v. Shell Oil Co.*, 656 F. Supp. 2d 825, 836 (N.D. Ill. 2009) (granting summary judgment in favor of defendants on civil conspiracy claim "[b]ecause Siegel has failed to establish his ICFA deceptive and unfair practices claim or his unjust enrichment claims").

### Conclusion

For the foregoing reasons, the Court grants defendants' motion for summary judgment [docket no. 77]. The Clerk is directed to enter judgment in favor of the defendants. The trial date of June 13, 2011 and the final pretrial conference date of

June 1, 2011 are vacated.

                                                                                    MATTHEW F. KENNELLY
                                                                                    United States District Judge

Date: May 18, 2011